## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | |
|---|---|
| ASCENSION SETON D/B/A ASCENSION SETON MEDICAL CENTER AUSTIN,<br>　　　　　　　　　Plaintiff,<br><br>　　vs.<br><br>NATIONAL LABOR RELATIONS BOARD, a federal administrative agency, JENNIFER ABRUZZO, in her official capacity as the General Counsel of the National Labor Relations Board, LAUREN M. MCFERRAN, in her official capacity as the Chairman of the National Labor Relations Board, MARVIN E. KAPLAN, GWYNNE A. WILCOX, and DAVID M. PROUTY, in their official capacities as Board Members of the National Labor Relations Board, and ELEANOR LAWS in her official capacity as an Administrative Law Judge of the National Labor Relations Board,<br>　　　　　　　　　Defendants. | Civil Action No. 6 : 2 4 - c v - 4 8 5 |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff Ascension Seton d/b/a Ascension Seton Medical Center Austin ("ASMCA"), brings this action against Defendants National Labor Relations Board ("Board" or "NLRB"), NLRB General Counsel Jennifer Abruzzo ("Abruzzo"), NLRB Chairperson Lauren M. McFerran ("McFerran"), Board Member Marvin E. Kaplan ("Kaplan"), Board Member Gwynne A. Wilcox ("Wilcox"), Board Member David M. Prouty ("Prouty") (McFerran, Kaplan, Wilcox, and Prouty, collectively, "Board Members"), and Administrative Law Judge Eleanor Laws ("Laws"), for declaratory and injunction relief and states as follows:

## INTRODUCTION

1.      ASMCA brings this suit for declaratory and injunctive relief against Defendants because Defendants are presently pursuing an unconstitutional administrative proceeding against ASMCA.

2.      ASMCA shall be able to demonstrate that it is entitled to injunctive and declaratory relief.

3.      First, ASMCA is likely to succeed on the merits of its constitutional claims that: (i) the NLRB's administrative law judges ("ALJs") are unconstitutionally insulated from removal (ii) the NLRB's Board Members are unconstitutionally insulated from removal; (iii) it is being deprived of its right to a jury trial regarding purely legal remedies sought by the NLRB; and (iv) the structure of the NLRB violates the separation of powers and ASMCA's due process rights.

4.      Second, ASMCA will show it is likely to suffer both economic and constitutional harms as a result of the damages sought and the very nature of the proceedings to which it may be subject.

5.      Third, ASMCA will demonstrate that the balance of equities tips in its favor; ASMCA stands to be deprived of its constitutional rights while Defendants stand to lose nothing.

6.      Fourth and finally, it is in the public's interest to ensure that administrative proceedings are consistent with the U.S. Constitution.

7.      ASMCA is likely to succeed on the merits and thus is entitled to declaratory and injunctive relief to ensure that it is not subjected to unlawful proceedings before an unconstitutionally structured agency.

## JURISDICTION AND VENUE

8.      This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331. ASMCA's claims arise under the Constitution of the United States. It alleges that certain

aspects of the NLRB's structure violate the Constitution. *See Axon Enter., Inc. v. FTC*, 598 U.S. 175 (2023) (holding statutory review schemes do not displace district court's federal question jurisdiction to adjudicate corporation's constitutional challenge to administrative agency).

9.     This Court has authority to grant declaratory and injunctive relief under the Administrative Procedure Act, 5 U.S.C. §§ 701-706, the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, and under the Court's inherent equitable powers.

10.    Venue is proper in this Court under 28 U.S.C. § 1391(e)(1)(B) because Defendants are officers of an agency of the United States and a substantial part of the events giving rise to the claim occurred in the Western District of Texas.

## **PARTIES**

11.    Plaintiff ASMCA is a non-profit acute care hospital located at 1201 W 38th St, Austin, TX 78705.

12.    Defendant NLRB is an administrative agency of the United States, headquartered in Washington, D.C. The NLRB enforces the National Labor Relations Act ("NLRA"). Under the NLRA, the NLRB is "empowered…to prevent any person from engaging in any unfair labor practice." *See* 29 U.S.C. § 160.

13.    Defendant Abruzzo is the General Counsel of the NLRB. She is sued in her official capacity.

14.    Defendant McFerran is Chairman of the NLRB. She is sued in her official capacity.

15.    Defendant Kaplan is a Member of the NLRB. He is sued in his official capacity.

16.    Defendant Wilcox is a Member of the NLRB. She is sued in her official capacity.

17.    Defendant Prouty is a Member of the NLRB. He is sued in his official capacity.

18.    Defendant Laws is an Administrative Law Judge of the NLRB assigned to preside over the NLRB proceeding against ASMCA. Laws is sued in her official capacity.

**FACTS**

19.     This action stems from two underlying unfair labor practice charges, Case 16-CA-307709 and Case 16-CA-308153, which were consolidated.

20.     The union Charging Party is the National Nurses Organizing Committee-Texas/National Nurses United ("NNOC" or "union").

21.     The union's charge relates to Jessica Walfort who, prior to her termination, worked as a Registered Nurse ("RN") at ASMCA and was a member of the NNOC bargaining unit.

22.     On or about November 16, 2022, ASMCA terminated Ms. Walfort for falsification of time records and violating the Hospital's policies on safeguarding protected health information ("PHI").

23.     The individual Charging Party is Riann Miller who, prior to her termination, worked as a Registered Nurse ("RN") in ASMCA's Intensive Care Unit ("ICU") and was a member of the NNOC bargaining unit.

24.     On or about September 8, 2022, ASMCA terminated Ms. Miller for falsification of time records.

25.     On or about November 21, 2022, the union filed an unfair labor practice charge with the NLRB regarding Ms. Walfort's termination (Case 16-CA-307709).

26.     On or about January 24, 2023, the union filed an amended unfair labor practice charge with the NLRB regarding Ms. Walfort's termination.

27.     On or about December 1, 2022, Ms. Miller filed an unfair labor practice charge with the NLRB regarding her termination.

28.     On December 22, 2022, the NLRB sought ASMCA's evidence and position in response to the above-referenced charges.

29.     On February 3, 2023, ASMCA submitted its evidence and position statement in

response to Case 16-CA-307709 and Case 16-CA-308153, respectively.

30.    On April 15, 2023, ASMCA submitted its supplemental position statement in response to Cases 16-CA-307709 and 16-CA-308153.

31.    On July 17, 2023, the NLRB requested additional information related to Cases 16-CA-307709 and 16-CA-308153.

32.    On August 8, 2023, ASMCA submitted its second supplemental position statement.

33.    On April 17, 2024, the Regional Director for Region 16 of the NLRB issued a consolidated complaint against ASMCA and a notice of hearing. The Regional Director set the hearing to take place on October 8, 2024. The Regional Director did not consult the Parties prior to setting the Hearing date.

34.    The consolidated complaint sought—in relevant part—the following remedy: "Make the [Charging Parties] whole for any other direct or foreseeable pecuniary harms and all reasonable consequential damages incurred as a result of Respondent's unlawful conduct, with interest calculated in accordance with Board policy[.]"

35.    On May 1, 2024, ASMCA answered the consolidated complaint denying all allegations.

36.    On September 6, 2024, the Regional Director for Region 16 issued an amended consolidated complaint and affirmed the administrative hearing would occur before an ALJ on October 8, 2024.

37.    ASMCA's answer to the amended consolidated complaint is not due to be filed until September 20, 2024.

38.    On September 13, 2024, ASMCA gave notice to ALJ Laws of its plans to file a motion to postpone the hearing due to active litigation on these same issues in this same jurisdiction.

39.    Specifically, because similarly situated plaintiffs within this jurisdiction and

another in the Fifth Circuit were granted preliminary injunctions enjoining the NLRB administrative proceedings, ASMCA requested that its hearing be postponed until the pending cases can be adjudicated.

40.     In *Space Expl. Technolo-Gies Corp. v. Nat'l Lab. Rels. Bd.*, this Court granted SpaceX's motion for preliminary injunction to enjoin the pending ALJ hearing scheduled regarding one or more pending unfair labor practice charges. No. W-24-CV-00203-ADA, 2024 WL 3512082, at *3 (W.D. Tex. July 23, 2024). The order provided that "[t]he Court finds that under current Fifth Circuit law, there is a substantial likelihood that SpaceX succeeds on the merits with regards to showing that the NLRB ALJs and Members are unconstitutionally protected from removal." Id., at *3.

41.     In *Energy Transfer, LP v. Nat'l Lab. Rels. Bd.*, a court also granted a motion for preliminary injunction enjoining the administrative proceedings on unfair labor practice charges finding that Energy Transfer, LP demonstrated that it had a substantial likelihood of success on the merits as a result of Fifth Circuit precedent. No. 3:24-CV-198, 2024 WL 3571494, at *1 (S.D. Tex. July 29, 2024)

42.     In *Aunt Bertha v. Nat'l Lab. Rels. Bd.*, another court within the Fifth Circuit followed suit and granted a motion of preliminary injunction to enjoin the pending proceedings because, in this Circuit, there is a substantial likelihood of success on the merits to the claim that the NLRB ALJs and Members are unconstitutionally insulated from removal. No. 4:24-CV-00798-P, 2024 WL 4202383, at *4 (N.D. Tex. Sept. 16, 2024).

43.     Counsel for ASMCA requested that the parties to the NLRB proceeding agree to postpone the October 8 hearing but they declined.

44.     Counsel for ASMCA has suggested to ALJ Laws that the hearing be postponed, but it currently remains scheduled for October 8, 2024.

## COUNT I – ADMINISTRATIVE LAW JUDGES ARE INSULATED FROM REMOVAL IN VIOLATION OF ARTICLE II OF THE CONSTITUTION

45.     ASMCA incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

46.     ALJs function as inferior officers of an executive agency. *See* U.S. Const. art. II, § 2; *see also Lucia v. SEC*, 138 S. Ct. 2044, 2053 (2018); *see also Westrock Servs., Inc.*, 366 NLRB No. 157, slip op. at 1 (Aug. 6, 2018) ("Board judges, like SEC judges, are inferior officers[.]").

47.     Inferior officers "are sufficiently important to executing the laws that the Constitution requires that the President be able to exercise authority over their functions." *Jarkesy v. Sec. & Exch. Comm'n*, 34 F.4th 446, 463 (5th Cir. 2022), *cert. granted*, 143 S. Ct. 2688, 216 L. Ed. 2d 1255 (2023), *and cert. denied*, 143 S. Ct. 2690, 216 L. Ed. 2d 1256 (2023), *and aff'd and remanded*, 144 S. Ct. 2117 (2024).

48.     The NLRB appoints ALJs, but ALJs may only be removed "for good cause established and determined by the Merit Systems Protection Board on the record after opportunity for hearing before the [Merit Systems Protection] Board." 5 U.S.C. § 7521(a).

49.     Members of the Merit Systems Protection Board are removable only for "inefficiency, neglect of duty, or malfeasance in office." 5 U.S.C. § 1202(d).

50.     "If principal officers cannot intervene in their inferior officers' actions except in rare cases, the President lacks the control necessary to ensure that the laws are faithfully executed." *Jarkesy,* 34 F.4th at 464.

51.     Because ALJs can only be removed "for good cause…after opportunity for hearing," and the Merit Systems Protections Board Members who may remove ALJs are themselves removable by the President only for "inefficiency, neglect of duty, or malfeasance in office," ALJs are insulated by the President by at least two layers of for-cause removal protections.

*See* 5 U.S.C. § 7521(a) and 5 U.S.C. § 1202(d).

52.    ALJs are insulated by the President by at least two layers of for-cause removal protections. As the Supreme Court has held, "the added layer of tenure protection makes a difference…[a] second level of tenure protection changes the nature of the President's review…[t]hat arrangement is contrary to Article II's vesting of the executive power in the President." *Free Enter. Fund*, 561 U.S. at 495-96.

53.    But for these unlawful removal restrictions, ALJs would be subject to removal by the President.

54.    The statute's provision of at least two layers of for-cause removal protections prevents the President from exercising Presidential authority under Article II of the Constitution.

55.    Being subject to illegitimate proceedings led by an illegitimate decisionmaker is a "here-and-now-injury" ripe for judicial intervention. *Axon Enter., Inc.*, 598 U.S. at 191.

56.    ASMCA is "entitled to declaratory relief sufficient to ensure that the [administrative] standards to which [ASMCA is] subject will be enforced only by a constitutional agency accountable to the Executive." *Free Enter. Fund*, 561 U.S. at 513.

57.    Without interim injunctive relief, ASMCA will be required to undergo an unconstitutional proceeding before an illegitimate decisionmaker.

58.    ASMCA bears a strong likelihood of success on the merits for the reasons articulated above.

59.    ASMCA is similarly situated to those plaintiffs within the Fifth Circuit whose administrative proceedings were enjoined because the courts found a substantial likelihood of success on the merits to the argument that the NLRB ALJs are unconstitutionally insulated from removal. *See Space Expl. Technolo-Gies Corp. v. Nat'l Lab. Rels. Bd.*, No. W-24-CV-00203-ADA, 2024 WL 3512082, at *3 (W.D. Tex. July 23, 2024); *Energy Transfer, LP v. Nat'l Lab. Rels. Bd.*,

8

No. 3:24-CV-198, 2024 WL 3571494, at *1 (S.D. Tex. July 29, 2024); *Aunt Bertha v. Nat'l Lab. Rels. Bd.*, No. 4:24-CV-00798-P, 2024 WL 4202383, at *4 (N.D. Tex. Sept. 16, 2024).

60.    If the NLRB is not enjoined from proceeding against ASMCA in the related unfair labor practice hearing, ASMCA will be irreparably harmed because it will have endured a proceeding led by officers who are unconstitutionally insulated from removal by the President.

61.    The balance of equities tip in ASMCA's favor because should the NLRB proceeding go forward, ASMCA will lose its right not to undergo a constitutional proceeding, an "injury…impossible to remedy once the proceeding is over," and "judicial review of [its] structural constitutional claims would thus come too late to be meaningful." *Axon Enterp.*, 598 U.S. at 191.

62.    It is in the public interest to remedy the unconstitutional removal procedures here in order to protect Americans' constitutional rights.

### COUNT II – BOARD MEMBERS ARE INSULATED FROM REMOVAL IN VIOLATION OF ARTICLE II OF THE CONSTITUTION

63.    ASMCA incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

64.    Article II of the U.S. Constitution states that the President must "take care that the Laws be faithfully executed." U.S. Const. art. II, § 3.

65.    Article II's Appointments Clause provides the President authority to appoint officers and inferior officers of the United States. *See* U.S. Const. art. II, § 2.

66.    The President has the power to appoint Board Members. The NLRB consists of five[1] Board Members. With the advice and consent of the Senate, the President appoints these Board Members to staggered, five-year terms. The President designates one Board member to

---

[1] At this time, the NLRB has one Member vacancy.

serve as the Chairman. *See* 29 U.S.C. § 153(a).

67.     However, the NLRA limits the President's executive authority to remove Board Members. The President may only remove Board Members "upon notice and hearing, for neglect of duty or malfeasance in office, but for no other cause." *Id.*

68.     The President does not have the power to remove Board Members for other causes such as inefficiency—an unconstitutional limit on the President's power. *Id.*

69.     Two exceptions to the President's removal power exist: "one for multimember expert agencies that do not wield substantial executive power, and one for inferior officers with limited duties and no policymaking or administrative authority." *Seila Law LLC v. CFPB*, 591 U.S. 197, 218 (2020); *see also Humphrey's Executor v. U.S.*, 295 U.S. 602 (1935).

70.     These exceptions do not apply here because Board Members "wield substantial executive power," and ALJs possess vast "administrative authority." *Id.*

71.     The Board exerts executive authority in multiple ways. The Board has power to appoint the "executive secretary, and such attorneys, examiners, and regional directors, and other such employees as it may…find necessary for the proper performance of its duties." 29 U.S.C. § 154.

72.     The NLRB also has the executive power to prevent any person from engaging in an unfair labor practice, issue subpoenas, engage in rulemaking, conduct union representation elections, adjudicate representation election disputes, and exercise prosecutorial power in federal district courts. *See* 29 U.S.C. §§ 156, 160.

73.     The Supreme Court has made clear that even when "the activities of administrative agencies 'take "legislative" and "judicial" forms,' 'they are exercises of—indeed, under our constitutional structure they must be exercises of—the "executive Power."'" *Seila Law LLC*, 591 U.S. at 197, n. 2.

74.    But for these unlawful removal restrictions, NLRB Board Members would be subject to removal by the President.

75.    Being subject to illegitimate proceedings led by an illegitimate decisionmaker is a "here-and-now-injury" ripe for judicial intervention. *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 191 (2023).

76.    ASMCA is "entitled to declaratory relief sufficient to ensure that the [administrative] standards to which [ASMCA is] subject will be enforced only by a constitutional agency accountable to the Executive." *Free Enter. Fund v. PCAOB*, 561 U.S. 477, 513 (2010).

77.    Without interim injunctive relief, ASMCA will be required to undergo an unconstitutional proceeding before an illegitimate decisionmaker.

78.    ASMCA bears a strong likelihood of success on the merits for the reasons articulated above.

79.    ASMCA is similarly situated to those plaintiffs in this jurisdiction whose administrative proceedings were enjoined because the courts found a substantial likelihood of success on the merits to the argument that the NLRB Members are unconstitutionally insulated from removal. *See Space Expl. Technologies Corp. v. Nat'l Lab. Rels. Bd.*, 2024 WL 3512082, at *3; *Energy Transfer,* 2024 WL 3571494, at *1; *Aunt Bertha,* 2024 WL 4202383, at *4.

80.    If the NLRB is not enjoined from proceeding against ASMCA in the related unfair labor practice hearing, ASMCA will be irreparably harmed because it will have endured a proceeding led by Board Members who are unconstitutionally insulated from removal by the President.

81.    The balance of equities tip in ASMCA's favor because should the NLRB proceeding go forward, ASMCA will lose its right not to undergo a constitutional proceeding, an

"injury...impossible to remedy once the proceeding is over," and "judicial review of [its] structural constitutional claims would thus come too late to be meaningful." *Axon Enter.*, 598 U.S. at 175.

82.    It is in the public interest to remedy the unconstitutional removal procedures here in order to protect Americans' constitutional rights.

## COUNT III – ADMINISTRATIVE LAW JUDGES ADJUDICATE PRIVATE RIGHTS WITHOUT A JURY TRIAL IN VIOLATION OF THE SEVENTH AMENDMENT TO THE CONSTITUTION

83.    ASMCA incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

84.    The Seventh Amendment protects the right to trial by jury. It provides that "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law." U.S. Const. amend. VII.

85.    The Supreme Court interprets "'Suits at common law' to include all actions akin to those brought at common law as those actions were understood at the time of the Seventh Amendment's adoption." *Jarkesy*, 34 F.4th at 452 (citing *Tull v. United States*, 481 U.S. 412, 417 (1987)).

86.    The Supreme Court noted that the Seventh Amendment "embrace[s] all suits which are not of equity or admiralty jurisdiction, whatever may be the peculiar form which they may assume." *SEC v. Jarkesy*, 144 S. Ct. 2117, 2128 (2024) (quoting *Parsons v. Bedford*, 3 Pet. 433, 447 (1830)).

87.    ASMCA is entitled to a jury trial if its adversary seeks *legal* relief against it. "While monetary relief can be legal or equitable, money damages are the prototypical common law remedy." *SEC v. Jarkesy*, 144 S. Ct. 2117, 2129 (2024) (citing *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 255 (1993). And, "it is well established that common law claims must be heard by a jury."

*Id.*, 144 S. Ct. at 2127.

88.    The NLRA authorized the Board to remedy unfair labor practices through an "order requiring [the] person to cease and desist from such unfair labor practice, and to take…affirmative action including reinstatement of employees with or without back pay." 29 U.S.C. § 160(c).

89.    The statute authorizes *equitable* relief. The statute does not authorize *legal* relief— such as compensatory damages.

90.    Despite this clear language, the Board has authorized its Regions to seek consequential or "compensatory" damages. *See Thryv, Inc.*, 372 NLRB No. 22 (Dec. 13, 2022) (enf. denied in part and vacated in part, *Thryv Inc., v. NLRB*, 102 F.4th 727 (5th Cir. 2024)).

91.    According to the Board, these damages may include "interest and late fees on credit cards;" "credit card debt;" "early withdrawals from [a] retirement account;" compensation for the loss of a "car or [] home," if the discriminatee is unable to make loan or mortgage payments; "increased transportation or childcare costs;" or "out-of-pocket medical expenses." *Id.* at 15.

92.    In an attempt to distance itself from the word "consequential" and avoid finding itself in violation of the Seventh Amendment, the Board explained:

> [W]e stress today that the Board is not instituting a policy or practice of awarding consequential damages, a legal term of art more suited for the common law of torts and contracts. Instead, we ground our decision in the make-whole principles of Section 10(c) of the Act…and our affirmative duty to rectify the harms caused by a respondent's unfair labor practice by attempting to restore the employee to the situation they would have been in but for that unlawful conduct.

*Id.* at 14.

93.    In other words, the Board authorized legal relief by calling it equitable relief so as to manipulate its authority.

94.    The Fifth Circuit saw through this, referring to remedies requiring "losses incurred as a direct or foreseeable result of" the alleged unlawful action as "novel, *consequential*- damages-

like labor law remed[ies]." *See Thryv Inc., v. NLRB*, 102 F.4th 727, 737 (5th Cir. 2024) (emphasis added).

95.     In its decision, however, the Fifth Circuit did not discuss whether or not the NLRB could continue to seek these novel consequential damages.

96.     In its Complaint in the underlying administrative matter, the Region is seeking consequential damages of an unspecified amount against ASMCA.

97.     The Region continues to pursue consequential damages against employers, including ASMCA.

98.     The fact that the underlying administrative complaint also seeks equitable relief does not strip ASMCA of its jury-trial right. *See Jarkesy*, 144 S. Ct. at 2128.

99.     Being subject to illegitimate proceedings led by an illegitimate decisionmaker is a "here-and-now-injury" ripe for judicial intervention. *Axon Enter., Inc.*, 598 U.S. at 191.

100.     ASMCA is entitled to declaratory relief to ensure that it may have the opportunity to present its case against consequential damages to a jury of its peers.

101.     Without interim injunctive relief, ASMCA may be ordered to pay damages to Charging Party without the appropriate safe guards a jury provides.

102.     ASMCA bears a strong likelihood of success on the merits for the reasons articulated above.

103.     If the NLRB is not enjoined from proceeding against ASMCA in the related unfair labor practice hearing, ASMCA will be irreparably harmed because it may be forced to pay damages that are not permitted to be determined in a non-Article III court setting.

104.     The balance of equities tips in ASMCA's favor because it stands to suffer both economic and constitutional harms while Defendants stand to lose nothing.

105.     It is in the public interest to remedy the Board's unconstitutional method of

recovering damages from employers.

## COUNT IV – THE BOARD'S WIELDING OF EXECUTIVE, LEGISLATIVE, AND JUDICIAL AUTHORITY AND POWER VIOLATES THE FIFTH AMENDMENT TO THE CONSTITUTION

106.    ASMCA incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

107.    The NLRB is an executive agency. 29 U.S.C § 153(a). It is not a part of the judiciary or legislature.

108.    Under the Constitution, the judicial power belongs to Article III courts and cannot be shared with legislature or executive. *See Stern v. Marshall*, 564 U.S. 462, 482 (2011).

109.    Under "the basic concept of the separation of powers…that flows from the scheme of a tripartite government adopted in the Constitution, the judicial Power of the United States…can no more be shared with another branch than the Chief Executive…can share with the Judiciary the veto power." *Id.* at 483 (citing *United States v. Nixon*, 418 U.S. 683, 704 (1974)) (internal citations omitted).

110.    However, as explained in Count III, *infra*, the Board recently took an adjudicatory role when it expanded its authority to award damages under the NLRA and made itself the body determining the amount of that award. *See Thryv, Inc.*, 372 NLRB No. 22 at 9.

111.    The ability to determine the appropriate amount of legal relief belongs to a jury, the function of the judiciary, not the executive.

112.    By determining the amount of direct and foreseeable pecuniary and consequential damages in ASMCA's administrative proceeding, Defendants, as executives, act as the judiciary.

113.    In a similar vein, it acted in a quasi-legislative role when it articulated a new interpretation of Section 10(c) of the Act which expressly authorizes the Board to issue an "order requiring [the] person to cease and desist from such unfair labor practice, and to take…affirmative

action including reinstatement of employees with or without back pay," and no other remedies. 29 U.S.C. § 160(c).

114.    By promulgating this new remedy, the Board essentially created its own rule and its own method of determining that remedy exercising all three powers at once.

115.    "An unconstitutional potential for bias exists when the same person serves as both accuser and adjudicator in a case." *Williams v. Pennsylvania*, 579 U.S. 1, 8 (2016).

116.    Being subject to illegitimate proceedings led by an illegitimate decisionmaker is a "here-and-now-injury" ripe for judicial intervention. *Axon Enter., Inc.*, 598 U.S. at 191.

117.    ASMCA is entitled to declaratory relief to ensure that its due process rights are not violated.

118.    Without interim injunctive relief, ASMCA will be required to undergo an unconstitutional proceeding before an illegitimate decisionmaker.

119.    ASMCA bears a strong likelihood of success on the merits for the reasons articulated above.

120.    If the NLRB is not enjoined from proceeding against ASMCA in the related unfair labor practice hearing, ASMCA will be irreparably harmed because it will have endured a proceeding led by individuals who serve as executives, legislators, and judges in violation of the separation of powers.

121.    The balance of equities tips in ASMCA's favor because, should the NLRB proceeding go forward, ASMCA will lose its right to undergo a constitutional proceeding, an injury "impossible to remedy once the proceeding is over," and "judicial review of [its] structural constitutional claims would thus come too late to be meaningful." *Axon Enter., Inc.*, 598 U.S. at 179, 192.

122.    ASMCA is similarly situated to those plaintiffs in this jurisdiction who's

administrative proceedings were enjoined because the court found that the plaintiffs would in fact suffer irreparable harm if subjected to the authority of the unaccountable NLRB Members. *See Space Expl. Technolo-Gies Corp. v. Nat'l Lab. Rels. Bd.*, No. W-24-CV-00203-ADA, 2024 WL 3512082, at *3 (W.D. Tex. July 23, 2024); *Energy Transfer, LP v. Nat'l Lab. Rels. Bd.*, No. 3:24-CV-198, 2024 WL 3571494, at *1 (S.D. Tex. July 29, 2024); *Aunt Bertha v. Nat'l Lab. Rels. Bd.*, No. 4:24-CV-00798-P, 2024 WL 4202383, at *4 (N.D. Tex. Sept. 16, 2024)

123.    It is in the public interest to remedy the unconstitutional procedures here in order to protect Americans' constitutional rights.

## REQUEST FOR RELIEF

WHEREFORE, ASMCA respectfully requests that the Court order the following relief and enter judgment:

1. Declaring that:

   a. The statutes, regulatory provisions, guidance, and/or policies restricting the removal of NLRB ALJs, including 5 U.S.C. § 7521(a) are unconstitutional;

   b. The statutes, regulatory provisions, guidance, and/or policies restricting the removal of NLRB Members, including 29 U.S.C. § 153(a), are unconstitutional; and

   c. The NLRB proceedings against ASMCA deprive it of its constitutional right to a trial by jury.

2. Preliminarily enjoining Defendants from subjecting ASMCA to unconstitutionally structured administrative proceedings pending the final resolution of this action;

3. Permanently enjoining Defendants from implementing or carrying out the unconstitutional actions identified above;

4. Awarding ASMCA its costs and expenses incurred in bringing this action,

including but not limited to, reasonable attorney's fees; and

     5.     Awarding such other and further relief, whether at law or in equity, as the Court deems just and proper.

Dated: September 19, 2024        Respectfully submitted,

                              */s/ James R. Ray, III*
                              James R. Ray, III
                              State Bar No. 24079746
                              MUNSCH HARDT KOPF & HARR, P.C.
                              1717 West 6th Street, Suite 250
                              Austin, Texas 78703-4777
                              Telephone: (512) 391-6100
                              Facsimile: (512) 391-6149
                              jray@munsch.com

                              Jonathon A. Rabin (Michigan Bar No. P57145)
                              HALL, RENDER, KILLIAN, HEATH & LYMAN, P.C.
                              * *Pro Hac Vice* Admission Pending
                              Attorneys for Plaintiff
                              101 W. Big Beaver Rd., Suite 745
                              Troy, MI 48084
                              (248) 457-7835
                              Fax: (248) 740-7501
                              jrabin@hallrender.com

4858-4347-5172v4